IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

---

:
VICTOR FIGUEROA and FRANCES :    HON. JEROME B. SIMANDLE
PALACIO, :
   :    Civil No. 09-4343 (JBS/AMD)
        Plaintiffs, :
:
   v. :
:         **OPINION**
CITY OF CAMDEN, et al., :
:
        Defendants. :
:

---

APPEARANCES:

Justin T. Loughry, Esq.
Lawrence W. Lindsay, Esq.
LOUGHRY & LINDSAY, LLC
330 Market Street
Camden, NJ 08102
    Attorneys for Plaintiffs

Stewart W. Jay, Esq.
TAYLOR & JAY, LLC
20 East Centre Street
Woodbury, NJ 08096
    Attorney for Defendants City of Camden and Officer William
    Roberts

Jay J. Blumberg, Esq.
Christopher M. Wolk, Esq.
BLUMBERG & LINDER, LLC
158 Delaware Street, Box 68
Woodbury, NJ 08096
    Attorneys for Defendant Officer Dean Gransden

William H. Buckman, Esq.
Surinder K. Aggarwal, Esq.
THE WILLIAM H. BUCKMAN LAW FIRM
Moorestown Office Center
110 Marter Ave, Suite 209
Moorestown, NJ 08057
    Attorneys for Defendant Arturo Venegas

**SIMANDLE**, Chief Judge:

## I.    INTRODUCTION

This matter is before the Court on three motions for summary judgment: Defendant Officer Dean Gransden [Docket Item 36] Defendants City of Camden and Officer William Roberts [Docket Item 37] and Defendant Arturo Venegas [Docket Item 38] all have moved for summary judgment against both counts in the Complaint. Plaintiffs in this action are Victor Figueroa and Frances Palacio, who seek compensatory and punitive damages for violations of their Fourth Amendment rights to be free of unreasonable seizure pursuant to 42 U.S.C. § 1983, arising from an encounter with Defendants Gransden and Roberts in Camden, New Jersey, on the evening of August 26, 2007.  Plaintiffs allege that Defendants Gransden and Roberts arrested both Plaintiffs with excessive force, causing physical and psychological injury.

The principal questions for the Court raised by these motions are (1) whether there is a dispute of fact over whether Defendants Gransden and Roberts unreasonably used excessive force when arresting Plaintiffs or whether Defendants are entitled to qualified immunity, and (2) whether a dispute of fact exists in the record regarding whether the officers' actions were caused, in part, by a custom or policy of Defendants City of Camden and Arturo Venegas.  As explained in detail below, the Court concludes that Plaintiffs have raised a dispute of fact regarding both issues, and will consequently deny all three motions for

2

summary judgment.

## II. BACKGROUND

The record on these motions contains the deposition testimony of several witnesses, many of whom recount material events differently. As the Court has been called upon to resolve motions for summary judgment, the Court will construe the facts and inferences in the light most favorable to the Plaintiffs as the non-moving parties. Egolf v. Witmer, 526 F.3d 104, 106-07 (3d Cir. 2008).

At approximately 7:00 p.m. on Sunday, August 26, 2007, Frances Maria Caraballo Quinones ("Maria") called her mother, Plaintiff Frances Palacio ("Ms. Palacio" or "Plaintiff Palacio") on the telephone. Loughry Cert. Ex. D., Frances Palacio Dep. at 12:3-10. On that evening, Ms. Palacio was at home with several family members, including her son, Angel Quinones, his daughter, Ms. Palacio's sister Carmen Palacio, and Carmen's daughter, Natasha. Id. In the phone call, Maria told Ms. Palacio that she had been beaten by her husband, Francisco Caraballo, again. Id. at 13:1-12. After hanging up the phone, Ms. Palacio told the other family members about it and they resolved to drive over to Maria's house, located at 310 North Dudley Street in Camden, New Jersey. Id. at 14:3-20. At the time, Ms. Palacio was 47 years old and her son Angel was 26. Palacio Dep. at 7:18-19; Gransden

3

Ex. 1, offense report.

When they arrived at the house at 310 North Dudley, Ms. Palacio and the others found Maria and her young daughter waiting for them in the driveway of the house.  Frances Palacio Dep. at 17:18-20;  Carmen Palacio Dep. at 10:16-19.  Carmen Palacio then called the Camden police to report the domestic abuse.  Carmen Palacio Dep. at 10:19-20.  The family members then went inside, and Frances or Carmen called Plaintiff Victor Figueroa ("Plaintiff Figueroa" or "Mr. Figueroa"), who was married to the sister of both Frances Palacio and Carmen Palacio, to tell him of the reported abuse and to ask for help.  Figueroa Dep. at 15:3-16:3.  Mr. Figueroa, who was approximately 58 years old on that date, resolved to drive to Melissa's house to help try to resolve the situation.  Id. at 19:9-21.

Meanwhile, Francisco Caraballo, Maria's husband, had left the residence at 310 North Dudley prior to the arrival of Maria's family, and was walking away from the house while he also called the police to report a domestic disturbance.  Loughry Cert. Ex. B, Caraballo Dep. at 15:6-16:7.  Caraballo then encountered a Camden police officer on patrol nearby: Defendant Officer Roberts.  Loughry Cert. Ex. A., Roberts Dep. at 47:1-8.  Caraballo introduced himself as a Camden firefighter and explained that he was "having problems with [his] girlfriend." Id. at 47:4-6.  Defendant Roberts then picked him up and escorted

4

him back to the residence.  Caraballo Dep. at 16:22-17:3.  When
they arrived back at 310 North Dudley, they met with at least one
other Camden police officer who had been independently dispatched
to the house, Defendant Officer Gransden.  Gransden Dep. at 24:2-
5.

Defendants Gransden and Roberts then escorted Caraballo into
the house and began talking with Melissa and Caraballo.  Palacio
Dep. at 20:11-14.  Most of the family members, along with
Caraballo, were gathered in the kitchen.  Roberts Dep. at 58:17-
60:8; Palacio Dep. at 21:18-22:1.  Some time later, Plaintiff
Figueroa arrived at Maria's house and walked directly into the
kitchen, reportedly without noticing the presence of the police
officers.  He walked up to Caraballo and attempted to punch him.
Figueroa Dep. at 24:22-25:17.  Witness accounts vary over whether
Plaintiff Figueroa actually connected his punch with Caraballo's
face or head, or whether Caraballo dodged out of the way of the
swing.[1]  Regardless, the Defendant police officers immediately
announced that Plaintiff Figueroa was under arrest.  Figueroa
Dep. 27:16-17; Palacio Dep. 23:12-20.

Plaintiff Figueroa testified that at that point he

---

[1] Plaintiffs Figueroa and Palacio testified that Caraballo
dodged out of the way of Mr. Figueroa's swing.  Figueroa Dep. at
25:1-15; Palacio Dep. at 22:14-21.  Defendants Gransden and
Roberts, along with Mr. Caraballo, the recipient of the punch,
all testified that Mr. Figueroa did, in fact, connect the punch.
Gransden Dep. 27:18-21; Roberts Dep. 60:13-14; Caraballo Dep.
26:17-25.

immediately submitted to being restrained and offered no resistance.  Figueroa Dep. 28:6-9.  His account is echoed by those of Plaintiff Palacio, and several other family members who witnessed the events.  Palacio Dep. 23:15-20; Frances Melissa Quinones Dep. 43:18-24; Carmen Palacio Dep. 17:17-24.  Defendants Gransden and Roberts, however, report that Mr. Figueroa resisted being handcuffed and required the application of force (pressure point techniques and targeted strikes to the arms) to get him to relax his arms and permit the application of restraints.  Gransden Dep. 29:13-15, 30:19-23; Roberts Dep. 61:1-20.  As this matter is before the Court on Defendant motions for summary judgment, the Court will assume the truth of Plaintiffs' accounts of the events – that Plaintiff Figueroa offered no resistance to being handcuffed.

The accounts of the witnesses continue to diverge after the application of restraints to Plaintiff Figueroa.  Several witnesses, including Plaintiffs Figueroa and Palacio, testified that the Defendant police officers then, after they had restrained Mr. Figueroa in handcuffs, began to punch him in the back, torso and face, one on each side of him.  Figueroa Dep. 28:16-29:1; Palacio Dep. 24:4-18; Carmen Palacio Dep. 16:13-17:24.  They reportedly smashed his face into the stove top and then pushed him down on to the ground, all while he was unable to offer any resistance.  Id.

6

The arrest and blows on Plaintiff Figueroa aroused the alarm of several of the witnessing family members, many of whom started yelling that the Defendant Officers should stop.  Palacio Dep. 25:11-22.  Angel Quinones, in particular, yelled that they had to stop because Mr. Figueroa had an aneurysm in his head and was at risk of serious injury if he were to be punched in the head.  Id. In response, the officers then turned on Angel, restraining him in handcuffs and subsequently began beating him as well.  Palacio Dep. 25:11-22.[2]

Plaintiff Palacio then reported that she noticed Caraballo smirking at her, which infuriated her, so she swatted a water bottle out of his hand, spilling water.  Palacio Dep. 26:13-27:5. One of the Defendant officers then announced that she was also under arrest, but took no immediate steps to attempt to restrain her.  Palacio Dep. 27:5-15.

Both officers then lifted Plaintiff Figueroa from the floor by his arms, which were handcuffed behind him, and began escorting him out the front door.  Palacio Dep. 27:15-16. Several witnesses observed them throw or drop Plaintiff on the concrete walkway leading up to the house as they were escorting him, causing him to fall on the concrete on his face (as he was unable to break the fall with his arms, which were restrained

---

[2] The Defendant Officers dispute this testimony, reporting that they reasonably restrained Angel only after he physically struck both of them.  Roberts Dep. 61:20-62:11.

behind him).  Palacio Dep. 29:1-8; Figueroa Dep. 32:1-3.  They
then threw Plaintiff Figueroa up against one of the police cars,
pulled him back, opened the back door, and shoved him through the
door head first, face down on the back seat, with his feet
hanging out the door, and then slammed the door on his foot,
breaking a toe.  Figueroa Dep. 32:19-34:7; Palacio Dep. 36:17-
37:9.

The officers then escorted Angel into another police car,
during which time Plaintiff Palacio was yelling at them that what
they were doing was wrong and that she would get them in trouble
because she worked for the city.  Palacio Dep. 30:21-31:10;
Carmen Palacio Dep. 21:2-22:5.  The officers yelled obscenities
back at her until they had secured both Angel and Figueroa into
separate cars.  Id.  Then, the officers "body slammed" Plaintiff
Palacio into a chain-link fence, handcuffed her, and then punched
her multiple times.  Palacio Dep. 31:19-33:11.  They then placed
her in a third police car, and all three cars drove to the
station for booking.  Shortly after arriving at the police
station, Plaintiff Figueroa was taken to a hospital to attend to
his injuries, after which time he was returned to police custody
for the night.  Figueroa Dep. 39:10-40:20.  Plaintiff Palacio
suffered bruising and psychological injuries from the event.
Palacio Dep. 40:3-41:14.  Plaintiff Figueroa suffered more severe
injuries including a broken toe, cuts and bruises on his face,

hands and torso, and claims to be suffering from long-term neurological damage.  41:17-49:3.

Both Plaintiffs and Angel Quinones were charged with various assault and resisting arrest charges, which were subsequently dismissed.  Jay Cert. Ex. I, Transcript of Proceedings on Apr. 3, 2009, State of New Jersey v. Francis Palacio, et al.  Plaintiff Figueroa was charged with resisting arrest, and assaulting Officer Roberts, and assaulting Caraballo.  Transcript at 5:21-6:2.  The State, upon consultation with Officer Roberts, reported that it could not prove either of the first two charges, and reduced the third charge to "improper behavior" for attempting to punch Caraballo.  Id. at 5:5-11.  Therefore, the first two charges were dismissed and Plaintiff Figueroa pleaded guilty to the third.  The charges against Angel of assaulting officer Gransden and resisting arrest were also dismissed.  Id. at 10:9-11.  Finally, the charges against Plaintiff Palacio of assault against Caraballo and improper behavior were likewise dismissed. Id. at 10:12-23.

After the events of August 26, 2007, Plaintiff Palacio filed a complaint with the Camden Police Internal Affairs unit. Palacio Dep. at 51:16-18.  She did not remember what the outcome of the investigation was.  Id. at 52:19-53:1.  Defendant Roberts does not remember being interviewed or asked to provide a statement to internal affairs as a result of any civilian

complaint.  Roberts Dep. 79:8-86:11.  In fact, Ms. Palacio's complaint is not recorded on the Index Cards recording the civilian complaints lodged against the Defendant Officers, though both list complaints of excessive force from other civilians from prior to and after the incident on August 26, 2007.  Jay Cert. Ex. S.  Neither officer was disciplined or reprimanded as a result of Ms. Palacio's complaint.

Plaintiffs filed their Complaint on August 24, 2009.  After extensive discovery practice, all Defendants have now moved for summary judgment.


## III. DISCUSSION

### A.  Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party."  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law.  Id.  Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.  Id.

Summary judgment will not be denied based on mere

10

allegations or denials in the pleadings; instead, some evidence must be produced to support a material fact.  Fed. R. Civ. P. 56(c)(1)(A); United States v. Premises Known as 717 S. Woodward Street, Allentown, Pa., 2 F.3d 529, 533 (3d Cir. 1993).  The nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986).

However, the Court will view any evidence in favor of the nonmoving party and extend any reasonable favorable inferences to be drawn from that evidence to that party.  Hunt v. Cromartie, 526 U.S. 541, 552 (1999).  See also Scott v. Harris, 550 U.S. 372, 378 (2007) (The district court must "view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion.").  The role of the Court is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

**B.  Analysis**

1.  <u>Individual Officers</u>

The individual officer Defendants, Gransden and Roberts, both move for summary judgment of Count One of the Complaint, which alleges an excessive use of force by both officers against both Plaintiffs, in violation of 42 U.S.C. § 1983.  The

11

Defendants' principal argument is based on the affirmative defense of qualified immunity.

As an "accommodation of competing values," qualified immunity strikes a balance by permitting a plaintiff to recover for constitutional violations where a governmental defendant was "plainly incompetent or ... knowingly violate[d] the law," while immunizing a state officer who "made a reasonable mistake about the legal constraints on his actions." Curley v. Klem, 499 F.3d 199, 206-07 (3d Cir. 2007) (internal quotations and citations omitted).

A defendant's entitlement to qualified immunity hinges on two considerations.[3] First, a court must determine "whether the plaintiff has alleged a deprivation of a constitutional right at all," Pearson v. Callahan, 555 U.S. 223, 232 (2009) (citation omitted), which, as the Court of Appeals has emphasized, is not a question of immunity as such, "but is instead the underlying question of whether there is even a wrong to be addressed in an

_____

[3] While under Saucier v. Katz, 533 U.S. 194 (2001), overruled in part by Pearson, 555 U.S. at 236, the qualified immunity standard followed a "rigid order of battle," Pearson at 234 (citation omitted), in which the question of whether a right was clearly established was assessed only if the plaintiff had adequately alleged a violation in the first place, the Supreme Court adopted a more flexible approach in Pearson. As the Court explained, "[b]ecause the two-step Saucier procedure is often, but not always, advantageous, the judges of the district courts and the courts of appeals are in the best position to determine the order of decisionmaking will best facilitate the fair and efficient disposition of each case." Pearson at 242.

analysis of immunity." Curley, 499 F.3d at 207.  A court must then decide "whether the right that was [allegedly] violated was clearly established, or, in other words, whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id.  (internal quotations and citations omitted).  This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." Brosseau v. Haugen, 543 U.S. 194, 198 (2004) (citation omitted).

In the instant case, Plaintiffs have sufficiently provided evidence of a deprivation of constitutional rights, specifically, that Defendants Gransden and Roberts effected an unconstitutional seizure of both Plaintiffs by arresting them with unreasonable or excessive force.  "To state a claim for excessive force as an unreasonable seizure under the Fourth Amendment, a plaintiff must show that a 'seizure' occurred and that it was unreasonable." Abraham v. Raso, 183 F.3d 279 (3d Cir. 1999).  Reasonableness is judged by the totality of the circumstances. Tennessee v. Garner, 471 U.S. 1, 8-9 (1985).  There is no question that both Plaintiffs were "seized" for Fourth Amendment purposes when they were physically restrained and arrested by Defendants. Berg v. County of Allegheny, 219 F.3d 261, 269 (3d Cir. 2000) (defining a Fourth Amendment seizure as occurring when a person is "detained by means intentionally applied to terminate his freedom of

movement"). The question, then, is whether there is probative evidence from which a reasonable jury could find that the actions taken by the Defendants in effecting the seizure of Plaintiffs Figueroa and Palacio were unreasonable.

The Court concludes, based on the deposition testimony provided by several competent witnesses, that the factfinder could reasonably conclude that the force used by Defendants Gransden and Roberts in seizing Plaintiffs Figueroa and Palacio was unreasonably excessive. Witnesses testified that both officers punched Plaintiff Figueroa several times after he had submitted without resistance to being handcuffed. Similarly, witnesses testified that both officers both "body-slammed" Plaintiff Palacio into a fence when she was offering no resistence, and then, after being handcuffed, Defendant Gransden gratuitously punched her.

The Third Circuit has articulated factors for a court to consider when evaluating the reasonableness of the use of force in effecting a seizure. See Kopec v. Tate, 361 F.3d 772, 776-77 (3d Cir. 2004). These factors include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he actively is resisting arrest or attempting to evade arrest by flight." Id. The Third Circuit has, in other contexts, also concluded that the severity of the injuries of the person arrested factors into the

14

reasonableness analysis.  Sharrar v. Felsing, 128 F.3d 810, 822
(3d Cir. 1997) ("We do not agree that the absence of physical
injury necessarily signifies that the force has not been
excessive, although the fact that the physical force applied was
of such an extent as to lead to injury is indeed a relevant
factor to be considered as part of the totality.")

The Court concludes that there is at least a dispute of fact
in Plaintiffs' favor on every one of these factors.  The "crimes"
believed to be at issue in the arrests were not particularly
severe, neither suspect could reasonably have been perceived to
pose a threat to others once each was handcuffed, neither could
have reasonably been believed to be resisting arrest according to
the accounts of several witnesses, neither was attempting to
flee, and both Plaintiffs suffered physical injuries as a result
of the force used by Defendants.

Accordingly, the Court concludes that a factfinder could
conclude that the use of force in both arrests in this case was
objectively unreasonable.  Therefore, Plaintiffs have satisfied
their burden of establishing that a jury could find a violation
of the Fourth Amendment, satisfying the first step of the
qualified immunity analysis of making out a deprivation of a
constitutional right.

Moving to the second step of the qualified immunity
analysis, the Court also concludes that this right was "clearly

15

established" at the time that it was violated by Defendants.  In other words, the Court concludes that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted" under Plaintiffs' account of the arrest.  See Curley v. Klem, 499 F.3d 199, 207 (3d Cir. 2007).  No reasonable officer would conclude that it is lawful to punch an arrestee who is offering no resistance and has been restrained by handcuffs.  Likewise, no reasonable officer would body-slam an arrestee against a fence (Ms. Palacio) or against the side of a police car (Mr. Figueroa) when they were already restrained.  Further, no reasonable officer would believe it is reasonably necessary to drop or slam a handcuffed arrestee onto the sidewalk (Mr. Figueroa).  Defendants' arguments on this point require the Court to construe the facts of the arrests in Defendants' favor, which is not proper on this procedural posture.  Therefore, the Court concludes that summary judgment is not warranted against Plaintiffs' claims against the individual officer Defendants on the basis of qualified immunity.

Finally, Defendant Gransden also attempts to assert immunity from the § 1983 claims under New Jersey's Tort Claims Act, N.J. Stat. Ann. § 53:3-3.  For example, Defendant Gransden argues that N.J. Stat. Ann. § 59:9-2(d) requires that Plaintiffs prove that their injuries were permanent, or otherwise meet the minimum injury threshold.  Further, Gransden argues that the Tort Claims

16

Act shields him from an award of punitive damages under N.J. Stat. Ann. § 59:9-2C.  However, Plaintiffs seek no relief from Defendants pursuant to the New Jersey Tort Claims Act, and therefore any immunities offered under that Act offer no protection to Defendants here, who are sued exclusively under federal law.  <u>Tice v. Cramer</u>, 133 N.J. 347, 375 (1993) ("We emphasize only that whatever the immunity conferred by the [New Jersey Tort Claims] Act, public entities and law enforcement personnel should understand that federal liability under section 1983 may exist, even if inconsistent with the Act, and if it does, the Act provides no immunity from the federal claim").

Therefore, the Court concludes that summary judgment is not warranted against Count One of the Complaint.

### 2. <u>Municipal and Supervisory Liability</u>

In Count Two of the Complaint, Plaintiffs allege that Defendants City of Camden and Arturo Venegas, serving as acting Director or Chief of Police for the Camden Police Department, are liable under theories of Municipal and Supervisory Liability. Defendants move for summary against this Count by arguing that no dispute of fact in the record exists that these Defendants were responsible for any constitutional violations suffered by Plaintiffs at the hands of Officers Gransden and Roberts.

### a. City of Camden's Municipal Liability

It is well established that municipal liability under § 1983

17

"may not be proven under the <u>respondeat</u> <u>superior</u> doctrine, but must be founded upon evidence that the government unit itself supported a violation of constitutional rights." <u>Bielevicz v. Dubinon</u>, 915 F.2d 845, 850 (3d Cir. 1990) (citing <u>Monell v. New York City Dep't of Soc. Servs.</u>, 436 U.S. 658 (1978)).  As a consequence, a municipality is liable under § 1983 only when "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." <u>Monell</u>, 436 U.S. at 694; <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 483 (1986) (plurality opinion) ("[M]unicipal liability under § 1983 attaches where--and only where--a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.")

The Third Circuit has neatly defined "policy" and "custom" for the purposes of municipal liability.

> A policy is made "when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues a final proclamation, policy or edict." <u>Kneipp v. Tedder</u>, 95 F.3d 1199, 1212 (3d Cir. 1996) (quoting <u>Pembaur</u>, 475 U.S. at 481).  A custom is an act "that has not been formally approved by an appropriate decisionmaker," but that is "so widespread as to have the force of law." <u>Bd. of County Comm'rs of Bryan County v. Brown</u>, 520 U.S. 397, 404 (1997).

<u>Natale v. Camden County Correctional Facility</u>, 318 F.3d 575, 584

18

(3d Cir. 2003).  Either one must be tied to the responsible municipality.

> There are three situations where acts of a government employee may be deemed to be the result of a policy or custom of the governmental entity for whom the employee works, thereby rendering the entity liable under § 1983.  The first is where the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy.  The second occurs where no rule has been announced as policy but federal law has been violated by an act of the policymaker itself.  Finally, a policy or custom may also exist where the policymaker has failed to act affirmatively at all, though the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.

Id. (internal punctuation and citations omitted).  Whether a policy or a custom, "The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged."  Bd. of County Comm'rs, 520 U.S. at 404.

Thus, Plaintiffs' burden on Defendant City of Camden's motion for summary judgment is to demonstrate that a material issue of fact exists regarding whether the Defendant City of Camden was the moving force behind the Defendant Officers' use of excessive force due to a policy or custom that, if not necessarily formally approved by the decisionmaker, was so

widespread as to have the force of law.

Plaintiffs argue that the policy makers responsible for the Camden Police Department had a policy or custom of failing to adequately train its officers in Fourth Amendment limits on the use of force and in failing to adequately supervise and discipline those officers who routinely flouted those protections.  In support of this contention, Plaintiffs point to the fact that both Defendant officers had been the subject of multiple civilian complaints to the internal affairs department, including for complaints of excessive use of force, and that neither officer had been disciplined for such behavior.  See Jay Cert. Ex. S, Internal Affairs Index Cards for Officer Roberts and Officer Gransden.  In response, Defendant City of Camden points out that all complaints of excessive force against both officers were determined as either "exonerated" or "not sustained." Therefore, Defendant argues, a prior history of favorably resolved civilian complaints by these two officers is insufficient to permit the factfinder to reasonably conclude that the City's policymakers had a practice or custom of ignoring or tolerating constitutional violations by officers.

The Court finds Defendant's arguments not conclusive for purposes of summary judgment.  First, Plaintiffs point out that Defendant Roberts' record of alleged constitutional abuses extends beyond his internal affairs index card; he was a named

20

defendant in a civil action alleging excessive force when he was
a police officer in the Lawnside Police Department, which settled
out of court.  Roberts Dep. 23:16-27:16.  Second, the Court notes
that "not sustained" dispositions appear to mean simply that an
"allegation cannot be proved or disproved at this time."
Aggarwal Cert. Ex. R.  Thus, a factfinder could reasonably
conclude that the "not sustained" complaints might actually
represent evidence of prior constitutional violations.  Third,
the Court notes that Plaintiff Palacio testified in her
deposition that she personally filed a civilian complaint related
to the August 26, 2007 incident, but the index cards of
Defendants Gransden and Roberts do not contain any reference to
such complaint, and neither Defendant Gransden nor Roberts appear
on this record to have been investigated by internal affairs nor
disciplined for their actions, which the Court has now concluded
could reasonably be found to constitute a violation of the
constitutional rights of two individuals.  This Court has
previously noted the Camden Police Department's slipshod record
keeping of internal affairs civilian complaints.  See Malik v.
Hannah, 799 F. Supp. 2d 355, 363 (D.N.J. 2011) ("the
investigation into Plaintiff's [internal affairs] complaint was
never even recorded on any of the officers' index cards,
indicating a faulty system of tracking and correcting
constitutional abuses on the part of the police department and

its policymaker.").[4]

While these facts certainly would not compel a factfinder to conclude that "the City of Camden Police Department was arguably out of control" as Plaintiffs argue, this Court has, in a previous case, concluded that notice of such facts would permit a factfinder to conclude that at the time of Plaintiffs' encounter with the Defendant officers, "the City of Camden's Police Department, including its internal controls, was in substantial disarray. . ." Malik v. Hannah, 799 F. Supp. 2d 355, 364 (D.N.J. 2011).

In the present case, there is ample evidence that the internal disciplinary standards for police conduct, investigations, and discipline were in substantial disarray at

---

[4] Further, Plaintiffs ask the Court to take judicial notice of the fact that, in August of 2007, there was a "pervasive feeling of immunity from discipline within the Department" as evidenced by the guilty pleas of three Camden Police Department officers to participation in a longstanding conspiracy to fabricate evidence and falsely charge innocent individuals in the City of Camden.  While the Court can take judicial notice of the fact of a judicial proceeding and the subject matter of that proceeding, see Selkridge v. United of Omaha Life Ins. Co., 360 F.3d 155, 162 n.8 (3d Cir. 2004), the Court cannot take notice of any factual findings, legal conclusions, or arguments advanced in such proceedings.  Najjar v. Ashcroft, 257 F.3d 1262, 1283 (11th Cir. 2001).  At most, the Court could take notice of the fact that other Camden Police Department officers entered guilty pleas for civil rights violations  of other citizens for violations taking place starting in May of 2007.  See Loughry Cert. Ex. I. Whether such evidence is sufficiently probative when weighed against the risk of unfair prejudice to the City of Camden and the officers on trial here, pursuant to Fed. R. Evid. 403, is not determined at this time, awaiting further argument at trial.

the time of this incident in August of 2007.  As discussed in greater detail below with respect to the duties of Defendant Venegas, the Attorney General of New Jersey had directed the Camden County Prosecutor's Office to take over the management of the Camden Police Department.  Loughry Cert. Ex. H.  Among the specific concerns leading to this takeover was the realization that the internal discipline system for addressing allegations of police misconduct were substandard or non-functional; this concern is reflected in the consulting agreement with Supercession Executive Arturo Venegas, who began his duties in August, 2006, which implied that the Police Department lacked "clear standards of performance for the police department and its employees" and a "system of progressive discipline that holds both employees and their managers accountable for performance and behavior."  Aggarwal Cert. Ex. A, Consulting Agreement at 3 ¶ g. There is, on the other hand, no evidence that the Police Department took steps to correct this situation by enacting a meaningful system for investigation of citizen complaints and imposition of progressive discipline for misconduct of officers between August, 2006 when the problems were acknowledged and August 26, 2007 when the incidents alleged in this case occurred.

"In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official

government policy." <u>Connick v. Thompson</u>, -- U.S. ----, 131 S. Ct. 1350, 1359 (2011). To establish the claim, policymakers must be "on actual or constructive notice that a particular training program causes city employees to violate citizens' constitutional rights ... [and] policymakers choose to retain that program." <u>Id.</u> at 1360.

Here, while Defendant City of Camden points to evidence in the record of the training program that all Camden Police Officers are required to undergo, and evidence that both Defendants Gransden and Roberts did, in fact, complete the required training, <u>see</u> Jay Cert. Exs. M-R, there is also evidence in the record that the City's policymakers were on notice that its training program and its internal discipline program were insufficient to prevent a repeated and uncorrected pattern of constitutional rights violations as of 2007 when these incidents occurred. The Court finds that, on a record such as this, Plaintiffs must survive Defendant City of Camden's motion for summary judgment.

> Were a jury to credit plaintiff's proofs that the City [of Camden] inadequately investigated its officers' alleged use of excessive force and other constitutional violations and failed to properly supervise or discipline its officers, a reasonable fact-finder could, in turn, conclude that the City's action, or lack thereof, constituted deliberate indifference and proximately caused plaintiff's injuries.

<u>Merman v. City of Camden</u>, 824 F. Supp. 2d 581, 594 (D.N.J. 2010).

Accordingly, the Court will deny Defendant City of Camden's
motion for summary judgment.

             b.  Defendant Venegas's Supervisory Liability

Finally, Plaintiffs seek to hold Defendant Arturo Venegas
liable for their injuries under a theory of § 1983 supervisory
liability.  Plaintiffs argue that Venegas, as the chief
policymaker of the City of Camden Police Department, is liable
for the constitutional violations of Plaintiffs caused by the
Department's policy or custom of tolerating constitutional
violations by its officers.  As the Court has already concluded
that the record reveals at least a dispute of fact over whether
the policymaker was on notice of a pattern of such violations,
the Court now turns to determine whether or not the record
demonstrates that Defendant Venegas individually could be found
liable for such violations under a theory of supervisory
liability.

Defendant Venegas moves for summary judgment against this
count for two reasons: first, because he claims that the record
demonstrates no dispute of fact that he had no responsibility for
officer training or discipline during his tenure in Camden; and
second, because he claims he is immune under the doctrine of
qualified immunity.

It is undisputed that Defendant Venegas, working under the

title of "Supercession Executive,"[5] was appointed by the Camden County Prosecutor's Office to manage the City of Camden Police Department.  Loughry Cert. Ex. H, Venegas Dep. at 15:13-24. Venegas began his responsibilities to manage the Camden Police Department in August of 2006.  Id. at 15:17.  His position of supercession executive was necessitated after the Attorney General of New Jersey ordered the Camden County Prosecutor "to supercede the management, administration, and operation of the Camden Police Department."  Aggarwal Cert. Ex. A, Consulting Agreement between the County of Camden and Arturo Venegas, Jr.

Defendant Venegas argues that he bears no supervisory liability for the City's policy or customs of tolerating constitutional violations because, as an outside consultant reporting to the County Prosecutor, he was not responsible for the Police Department's training or discipline procedures.  Id. at 30:5-25; 31:13-15; 39:10-24; 40:15-18.

However, Defendant Venegas's Consulting Agreement with the County of Camden states that Venegas would assume a scope of services for the Police Department that included

> Set[ting] forth clear standards of performance
> for the police department and its employees,

---

[5] The Court notes that the transcription of Mr. Venegas's title in his deposition is recorded as "super session executive." Aggarwal Cert. Ex. D, Venegas Dep. 15:18-19.  The Court recognizes that this spelling may be a transcription error for the title as it is written in the Consulting Agreement as "Supercession Executive."  Aggarwal Cert. Ex. A.

> and implement[ing] a system of progressive
> discipline that holds both employees and their
> managers accountable for performance and
> behavior.

Consulting Agreement at 3 ¶ g.  These duties were not assignable

by Venegas to any other person without the written approval of

the County.  Id. at 7 ¶ 17.  Defendant Venegas's responsibilities

under this contract were renewed on June 1, 2007.  Aggarwal Cert.

Ex. B, Amended Agreement.  The original term of the contract was

set to expire on August 1, 2007, but was extended until August 1,

2008 in July of 2007.  Aggarwal Cert. Ex. C, Contract Extension.

Therefore, the Court concludes that the record contains at

least a dispute of fact over whether Defendant Venegas had

primary responsibility for training and discipline of Camden

Police Officers for at least a year prior to the events at issue

in the instant matter in August of 2007, and is therefore liable

under a theory of supervisory liability for Plaintiffs' injuries

caused by the Camden Police Department's custom or policy of

tolerating unconstitutional conduct by its officers.

Alternatively, Defendant Venegas argues that he is entitled

to supervisory qualified immunity for his actions overseeing the

Camden Police Department because a reasonable supervisor in

Defendant's position would not have believed that he was being

deliberately indifferent to the risk of the Defendant Officers'

use of excessive force.  See Rosenberg v. Vangelo, 93 F. App'x

373, 378 n.2 (3d Cir. 2004).  The Court disagrees.  Given the

scope of Venegas's responsibilities under his supercession
executive agreement with the County, and the context in which he
was brought to oversee the Camden Police Department, including
the Attorney General's letter, the Court concludes that a
reasonable supervisor would have known that disclaiming all
responsibility for duties such as discipline and training of
police officers would be deliberately indifferent to the
possibility of undisciplined officers effecting arrests with
excessive force.  Whether Defendant Venegas took meaningful steps
to improve officer training regarding reasonable force in arrests
and to improve internal disciplinary investigations and measures
during the year leading up to the incidents complained of herein
is not in the present record.  Accordingly, the Court will deny
Defendant Venegas's motion for summary judgment.


**IV.   CONCLUSION**

The Court has concluded that summary judgment is not
warranted as to either Count One or Count Two of the Complaint
because material disputes of fact exist regarding the amount of
force that was employed against Plaintiffs Figueroa and Palacio,
whether that force was reasonably justified, and whether the
Plaintiffs' injuries were caused by a policy or custom created or
acquiesced to by Defendants City of Camden and Arturo Venegas.
The accompanying order will be entered.  The case will be

28

scheduled promptly for trial.


**August 28, 2012**                    **s/ Jerome B. Simandle**
Date                                   JEROME B. SIMANDLE
                                       Chief U.S. District Judge